18m 761
94 167

---

## Campbell Turnpike Company *vs.* Dye, &c.

### APPEAL FROM CAMPBELL CIRCUIT.

Case 40.

MOTION.

1. The 2*8th* section of the chapter of the Revised Statutes on *"Turnpike and Plank Roads,"* page 6*7,* in regard to roads running laterally with a turnpike or plank road, applies as well to roads opened before the passage of the statute as to those subsequently opened. The act of 1*42, (3 Stat. Law,* 567,) has a provision in substance the same as the Revised Statutes. (See MSS. opinion, *Black vs. Germantown and Hamilton Turnpike Road Company, summer term,* 1854.)

2. The act of the Legislature requiring the closing of roads running laterally with turnpike or plank roads, unless within one mile of a town, is imperative, and the county court is bound to order such roads to be closed, whatever may be the inconvenience to the citizens.

[The facts of the case appear in the opinion of the court. REP.]

*James R. Hallam,* for appellants—

The Revised Statutes, (*page* 687,) contains the following provision: " No lateral road shall be opened ' to and from the same place now connected by any ' turnpike or plank road, or which may hereafter be ' so connected, so as to run within one mile of such ' road; and any such lateral road now in use, or ' which may hereafter be in use, shall, by order of ' the county court, be shut up and closed." Under this statute the proceeding was had before the county court to close up the lateral road which runs with the turnpike about four miles.

For the turnpike company it is insisted, that upon the facts appearing in evidence not only by the report of the viewers and surveyor, but the testimony offered and heard, that the county court is bound to order the road to be closed, and had no discretion on the subject. The law is imperative.

On the question of jurisdiction the court is referred to the case of *Taylor's ex'or. vs. Berry, MSS. opinion of Summer Term,* 1855.

*Root & Webster,* appellees—

Argued—1. That this court had no jurisdiction of the appeal, because the judgment or order was by the county court, and an appeal given to the circuit court. (See *secs.* 15, 16, 17, *of the Civil Code, and sec.* 20.)

It is supposed, that as the whole subject of appeals, as contained in the Code, was enacted since the Revised Statutes, (*Sess. Acts,* 1853–4, *vol.* 1,) that any enactments in the Rev. Stat. on the subject, and

within the purview of the Code, are repealed and especially so by *sec.* 748, which was one of the amendments of the Code which went into operation on the 1st of July, 1854. (See *Civil Code, sec.* 908, *Sess. Acts of* 1853–4; *see also secs.* 766, 875.)

2. The road which the appellants seek to have shut up and closed is not within the scope and embraced by the 28*th section, page* 687, *of the Revised Statutes,* relating to roads lateral to and within one mile of a turnpike.

3. That upon the merits of the case the road should not be closed.

In this case the old road was opened about sixty years before the turnpike was built, and the turnpike has been *opened laterally* to the old road, and that too very recently. How could a road be opened lateral to a turnpike that was not in existence? There must be a turnpike road before one can be opened *lateral* to it.

Again: the lateral road must be opened to and from the same *places* connected by the turnpike. In this case the *places* connected by the turnpike are Newport and Alexandria. The road sought to be closed does not extend to either of those places. This record shows that the old road is not in fact a *lateral* road to the turnpike under any view, but that it is the trunk, with several very important branches extending out into the country, many miles from the turnpike, and that it is an indispensable inlet and outlet to those branch roads, and indispensable to their enjoyment.

4. Has the county court a right to exercise a sound discretion on the question? It is contended it has; and that all the facts show that the discontinuance of this road will be a great inconvenience to a large number of citizens, and will work good to none but the turnpike corporation; and in this state of case it is respectfully insisted that the county court has a discretion, and that it was properly exercised in this case.

It was not to meet such cases as this that the act was passed, but to meet cases where lateral ways were opened to evade the tax for travel between gates, and have the benefit of the turnpike also. It is admitted that the county courts have the power, in the exercise of a sound judicial discretion, to discontinue public roads which are unnecessary, as where a lateral road of the kind mentioned has been opened to *defraud* a turnpike company out of its tolls, by using the pike and evading the gate; or, where a public road has fallen into disuse, and is not needed for public travel. It is proper, in all such cases, that the power should exist and be exercised, else a road once established would remain forever, though not needed. So also where it costs more to keep a road in order than the benefit derived from it; but the road sought to be closed up in this case is a very different thing from any of those.

All roads are opened for the public good, (5 *J. J. Marshall*, 9; 2 *Ib.* 221,) and not for private emolument or the profit or convenience of a few by compelling the community to travel on a particular route selected by the few, and to pay them tolls therefor.

This old road was established by an act of the legislature in 1817, as a state road from Newport through Falmouth to Cynthiana, making it a great highway. The faith of the state was thereby pledged, and inducements thereby held out to the people to settle on it as a permanent highway, and so they did, cleared the forest, built houses, and tilled the ground, and by their toil have made the wilderness to blossom as the rose. Now shall this highway be taken from them, which will bring ruin upon them? Are there no vested rights in this old road? The constitution, (*art.* 13, *sec.* 3,) says, "the right of property is before and higher than any constitutional sanction." The value of property will be depreciated by closing the way of access to it.

In every view of the case this is a most oppressive and unreasonable proceeding.

Judge Duvall delivered the opinion of the court.

CAMPBELL
TURNPIKE CO.
vs.
DYE, &c.

Jan. 25, 1858.

The appellants applied, by motion, to the Campbell county court for an order to close and shut up so much of the old road from Newport to Alexandria as lies between the point at which it leaves the turnpike near Eckerts, and the point at which it again intersects the turnpike near Youtsey's. Commissioners were appointed to view both roads, and a majority of them reported that the closing of the old road would be no inconvenience to the citizens, and a great convenience to the public; that the distance between the turnpike and the old road is less than a mile at any point, and that the turnpike affords greater facilities for travel than the old road. They exhibit with their report a map executed by the surveyor, from which it appears that the two points mentioned are connected by both roads, and that it is about four miles from one point of intersection to the other.

One of the commissioners made a minority report, in which he states, in substance, that there are a number of residences and well improved farms situated on the old road, together with a post-office and school-house; that there were five roads branching off from the old road in the direction opposite to the turnpike, and leading into thickly settled neighborhoods on the Licking river, and that the closing of it will be a very great inconvenience to the public, and especially to the large number of people to whom it is indispensable as a means of access to the county seat and to Newport.

The county court having rejected the application, an appeal was taken to the circuit court, upon the trial of which the facts and conclusions stated in the minority report were sustained by the proof. On the part of the appellants it was proved that the old road was chiefly used in good weather, by persons traveling from Newport to Alexandria, the termini of the turnpike, such persons claiming an abate-

CAMPBELL
TURNPIKE Co.
vs.
DYE, &c.

ment of toll in proportion to the distance—being about four miles as already stated.

The circuit court affirmed the order of the county court, and to reverse that judgment the turnpike company prosecute this appeal.

The only material question presented by the record, and the only one we shall notice, is that which arises on the construction of the 28th section of the chapter on "turnpikes and plank roads," (*Revised Statutes, page* 687.) which is as follows:·

"No lateral road shall be opened to and from the 'same places now connected by any turnpike or 'plank road, or which may be hereafter so connect- 'ed, as to run within one mile of such road; and 'any such lateral road, now in use, or which may 'hereafter be in use, shall, by order of the county 'court, be shut up and closed. But such lateral 'roads shall not be precluded from so running as 'near as a mile, for the distance of one mile from 'any town or city."

For the appellees it is insisted that this section authorizes the county court to close such lateral roads only as are opened after the turnpike shall have been constructed, and that roads which have been in use long prior to the construction of a turnpike between the same points, parallel to, and within a mile of, such former road. cannot be said to have been *opened lateral* to such turnpike, and are not, therefore, embraced by the terms of the section.

This construction, although plausible, cannot be maintained. The language of the statute is general, and expressly comprehends *all* lateral roads "now in use, or which may hereafter be in use." The word "*such*," as used in the section, evidently refers only to the description. previously given, of the lateral road which the court is authorized to close; and the description embraces all roads leading to and from the same places connected by any turnpike or plank road, and running within one mile of the latter, so that all *such* roads, no matter when

1. The 28*th sec. of the chapter of Rev Statutes on "Turnpike and Plank Roads." p.* 687, in regard to roads running laterally with a turnpike or pl'k road, applies as well to roads opened before the passage of the statute as to those subse-

opened, or how long used, must be regarded as the subjects of the absolute authority conferred by the act upon the county courts, unless they can be shown to be within the terms of the exception in favor of all lateral roads " running as near as a mile from a turnpike, for the distance of a mile from any city or town." This is the only class of roads expressly excepted out of the operation of the act, and no other exception can be implied. Besides, it was provided by the act of 1842, (3 *Stat. Law*, 567,) that after the turnpike roads in this commonwealth should be opened it should be unlawful to open any collateral road running from and to the same place within a mile of a turnpike, " and all and every such road, now made, shall be discontinued as soon as any turnpike shall be opened." The language of the act is clear and explicit, and no doubt can exist as to its proper construction. The 28*th section of the Revised Statutes* was doubtless intended as a substantial re-enactment of its provisions.

quently opened. The act of 1842, (3 *Statute Law*, 567,) has a provision in substance the same as the Rev. Stat. (See MSS. opinion, *Black vs. Germantown & Hamilton T. P. R. Co* summer term, 1854.)

But the question under consideration has already been conclusively settled by this court in the case of *Black vs. Germantown and Hamilton, Turnpike Road Company*, (*MSS. Opinion, Summer Term*, 1854.) The facts of that case were the same in every essential particular as those of the case before us, and it was held, that the language of the section quoted was imperative, requiring the closing of such lateral roads unconditionally; that the legislature must have foreseen the inconveniences which would thereby result to individuals, in almost every such case, and yet had failed to confer upon the courts any authority or discretion to inquire into the merits of any particular case before making the order for discontinuing the road; that no such authority or discretion could be implied from the terms of the statute, and that none, therefore, could be exercised by the courts whose sole duty consisted in closing the road without any inquiry into the individual hardships that might ensue.

2. The act of
the legislature
requiring the
closing of roads
running lateral-
ly with turnpike
or plank roads,
unless within 1
mile of a town,
is imperative,
and the county
court is bound
to order such
roads to be clos-
ed, whatever
may be the in-
convenience to
the citizens.

The facts disclosed by this record certainly afford a forcible illustration of the private injuries which may result from the operation of this law, whatever public benefits may have been intended to be secured by it. The appellees and their neighbors, by the discontinuance of this road, will be deprived of a right enjoyed by themselves and their ancestors for a period of more than fifty years—a right, too, which is never surrendered without reluctance. Other means of access to their county seat, and to their markets at Newport or Cincinnati, will have to be provided. Although we have not been unmindful of these considerations, yet our duty is to expound the law, not to repeal or modify it. The remedy for the evils complained of must be sought elsewhere.

We are of opinion that, upon the state of fact made out by the proofs in this case, the county court of Campbell should have sustained the motion of the appellants, and should have made an order directing the lateral road described in the notice and report of the viewers to be closed and shut up.

The judgment is therefore *rsversed*, and the cause remanded for further proceedings in conformity with this opinion.

